*706 OPINION OF THE COURT
Michael R. Juviler, J.
May a witness be an accomplice to a felony murder and not to the intentional murder of the same victim? This appears to be a case of first impression on this question.
This is an opinion explaining a decision denying a request to charge that Jermel Isaac, a witness for the prosecution at the defendant’s trial, was an accomplice as a matter of law for all the charges submitted to the jury, and therefore that his testimony required corroboration. I ruled that it was a question of fact for the jury whether Isaac was an accomplice to felony murder, and that as a matter of law he was not an accomplice to intentional murder or manslaughter in the first degree. I also treated the request as an application for a trial order of dismissal of all counts; if Isaac was an accomplice as a matter of law, all of the charges had to be dismissed, because as a matter of law there was insufficient evidence without his testimony to tend to connect the defendant to the commission of any crime. (See, CPL 60.22.)
THE FACTS
The defendant was tried on a charge of murder in the second degree as a felony murder, alleged to have been committed in the course of an attempted burglary, and on a charge of murder in the second degree as an intentional murder.
At the trial the People contended that the defendant and one Ian McDonald were part of a group of young men, some in costume, who went to grocery stores in Coney Island, Brooklyn, on Halloween, and that in the course of these visits the intruders stole eggs, which they threw against the entrances of the stores, and beer. The People contended that the store of the victim in this case was the fourth store that the defendant went to; that the defendant and McDonald tried to push their way into the store; and that the defendant shot the victim, an employee in the store, when the victim and the owner of the store tried to push the door closed to keep the raiders out.
Jermel Isaac gave testimony identifying the defendant as a certain person who did certain things at the door to the fourth store, while dressed as a "Ninja”, immediately before and after the shooting; if the jury accepted this testimony, the jury could readily infer from other evidence, establishing that the Ninja was the shooter, that the defendant was the shooter. *707 There also was evidence from another source that at a pretrial hearing, after Isaac had been spoken to by the defendant’s sister, a former schoolmate, in the hallway outside the courtroom, and Isaac had pretended not to recognize anyone in the court, the defendant winked at him in an exaggerated manner.
The theory of the charge of felony murder was that the killing took place in the course of an attempted burglary with intent to steal groceries. Testimony by Isaac about the defendant’s connection to the three earlier incidents originally was admitted, with limiting instructions, on the issue of the defendant’s intent to steal as a component of the element of attempted burglary under the felony murder charge.
Isaac testified that he was part of the group that visited the first three stores and stole eggs and beer from them, that the group got larger and larger as it went from store to store, and that during the crime at the fourth store he was out on the street talking to a friend at the back of a group of 50 or 60 people when the shooting happened.
I instructed the jury, regarding Isaac’s testimony bearing on the charge of felony murder, that it was a question of fact for the jury whether Isaac was an "accomplice”; if he was, then the jury must acquit the defendant of felony murder, there being insufficient corroborating evidence. I instructed the jury that the instructions about an accomplice witness did not apply to the charge of intentional murder or to the lesser included charge of manslaughter in the first degree.
I also gave instructions to this effect:
An "accomplice” is a witness in a criminal case who, according to the facts as the jury finds them, may reasonably be considered to have participated in "[t]he offense charged” (see, CPL 60.22 [2] [a]) or "[a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged” (see, CPL 60.22 [2] [b]). An offense based on the same or some of the same facts or conduct that constituted the alleged felony murder could include attempted burglary of the victim’s store or attempted theft of something from that store. In order to determine whether Isaac was an accomplice at the victim’s store, the jury was to consider his testimony about his own conduct and intent and must consider all other evidence relating to his conduct and intent. On the basis of all of the evidence, the jury had to determine whether Isaac reasonably may be considered to have participated in the felony murder *708 or an offense based on the same or some of the same facts or conduct constituting the felony murder, that is, attempted burglafy or attempted larceny. To participate means to share in or to take part in; participation is made up of an act and intent. Isaac’s participation meant that he took part in the alleged felony murder, the alleged attempted burglary, or an alleged attempted larceny from the store of the victim, by joining in it or aiding the defendant to do it, and that Isaac had the intent that that alleged offense take place at the victim’s store. (See, CPL 60.22 [3]: "such witness engaged in the conduct constituting the offense with the mental state required for the commission thereof.”) The jury was to consider evidence about what happened earlier in the evening and Isaac’s conduct at other stores on the issue of Isaac’s intent, bearing on the question whether he was an accomplice at the store of the deceased. With respect to the. victim’s store, the jury was to consider where Isaac was in relation to the defendant and to the store; and what Isaac was doing, with whom, and with what intent or purpose, if any.
The jury found the defendant guilty of felony murder, not guilty of intentional murder, and guilty of manslaughter in the first degree (causing death with intent to cause serious physical injury).
ACCOMPLICE STATUS FOR FELONY MURDER
There is considerable authority compelling the determination that whether Isaac was an accomplice to the felony murder was a question of fact for the jury and that he was not an "accomplice as a matter of law” to felony murder, even though by his own testimony he was present when the stealing spree was planned by "Money”, a companion of the defendant, before the visit to the first store; Money produced a gun when he spoke; Isaac took part in the first three incidents; and he was on the street outside the scene of the fatal incident. The facts taken in the light most favorable to the People were reasonably susceptible of different inferences regarding Isaac’s part in fourth incident, and therefore presented a question of fact about that. There was no evidence that he aided the defendant in any way at the scene of the store, or tried to enter the store, or was near the defendant or McDonald, or had planned to enter a store by force, or had contact or communications with the defendant or McDonald at the store. (See, People v Dorta, 46 NY2d 818 [felony murder *709 during robbery; witness’s presence in victim’s apartment during conversation of defendant about possible robbery, and her presence during the crime, without direct proof that she aided in the preparation or execution of crimes of which the defendant was charged, created an issue of fact for the jury whether the witness was an accomplice]; People v Basch, 36 NY2d 154 [burglary and larceny at a clubhouse; witness testified that he and the defendants entered the club grounds while snowmobiling, that the defendants told him to act as a lookout, that the defendants entered the clubhouse and came out with club property, and that later the witness bought an item of the property from them; same holding]; People v Vataj, 69 NY2d 985 [witness was part of defendant’s drug enterprise, and testified against defendant charged with a drug-related murder; shortly before the murder, the witness had placed the murder gun in the defendant’s car, and that car was used to transport the victim to the murder site; question of fact whether witness was an accomplice to the murder and to criminal possession of a weapon with intent to use unlawfully against another]; People v Dorler, 53 NY2d 831 [burglaries and petit larceny; witness was present when plans for burglaries were hatched, he intended to commit a burglary, and on the night of the burglaries he met an accomplice and arranged to meet later to commit the crimes; he arrived too late to take part, and after the crimes he received $10; question of fact whether witness was an accomplice].)
This tragic trick-or-treating at stores was not the kind of "sustained conspiracy or scheme” that renders a participant in it who testifies against his coconspirators an accomplice as a matter of law to all crimes committed during its operation, no matter when he joins it with criminal intent or when he abandons or neglects his criminal participation. (See, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.22, at 441; People v Cona, 49 NY2d 26 [undercover police officer who was corrupted by the gamblers and police offers he investigated was an accomplice for all offenses he took part in before and after he became corrupt]; People v Thomas, 135 Misc 2d 434 [Sup Ct, Extraordinary Term, Kings County] [corrupt police officer who agreed to work undercover was an accomplice for all offenses he took part in corruptly and while acting undercover].) The Cona and Thomas cases held that an "admitted accomplice” who participates criminally at some point in an "ongoing criminal enterprise”, such as " 'protection’ ” of gamblers or drug dealers, is *710 an "accomplice” as a matter of law to any crime he witnesses while actually or ostensibly taking part in the enterprise, even if his culpability did not continue during the crime. (People v Cona, 49 NY2d, supra, at 35.) For the following reasons, this case is distinguishable.
The haphazard sequence of shoplifting raids on Halloween was different from that kind of continuing corrupt business. Whatever offenses Isaac committed, although connected in sequence, were not part of "an ongoing criminal enterprise pursuant to which” the parties committed crimes on a "regular basis”. (Compare, People v Cona, supra, at 35.)
Moreover, in Cona and Thomas (supra), the offenses that the witnesses had "admitted” were crimes identical in content and seriousness to the offenses that were in issue, and those "admitted” offenses were prearranged outgrowths of the common ongoing enterprise. These witnesses therefore had a substantial motive to give evidence against alleged coconspirators to help themselves. That motive is the reason for the statute requiring corroboration, and it was given great weight in the opinions Cona and Thomas, In this case, the defendant’s homicidal conduct at the fourth store was a gross, unplanned escalation of the previous larcenies, and neither Isaac nor the police officer to whom he gave information about the shooting considered Isaac to have been a party to it or subject to criminal liability for it. To the surprise of the police, Isaac spontaneously had revealed his knowledge about it when he was arrested the day after the shooting for an unrelated chain-snatching. He was never arrested for, charged with, in custody for, or suspected of any complicity in the felony murder. His motive for cooperating in the investigation was fully explored at the trial, but it did not make him an accomplice as a matter of law, any more than a defendant’s cellmate who testifies about the defendant’s confession made in jail is an accomplice.
Judge Gabrielli’s opinion for the Court of Appeals in Cona put the matter succinctly: The corrupt police officer witnesses were "prosecution witnesses who actually were accomplices” (supra, 49 NY2d, at 37 [emphasis added]). A comparison to Isaac might be reasonable if he had been an "admitted accomplice” to a felony murder, or at least to an armed robbery, at 1 of the first 3 stores. Then, even if he had behaved as innocuously as he did at the fourth store, he might have been deemed an accomplice as a matter of law, under the rationale of the Cona decision — that is, "actually an accomplice”. Under *711 the present circumstances, however, the question whether he was "actually” an accomplice of the defendant for felony murder was a question of fact for the jury.
ACCOMPLICE STATUS FOR INTENTIONAL MURDER AND MANSLAUGHTER
The remaining question is whether Isaac was an accomplice as a matter of law, or, in the alternative, could have been an accomplice as a question of fact, to the intentional murder and the included manslaughter in the first degree.
Before turning to the merits, I note that this issue may have been rendered moot by the verdict. The verdict convicting the defendant of felony murder means, in the light of my instructions, that the jury found that Isaac was not an accomplice to felony murder, or to attempted burglary or attempted larceny, the other "facts” and "conduct” in the felony murder charge. On the facts of this case, there is no other conceivable basis for Isaac’s being an "accomplice” to manslaughter in the first degree. He did nothing to harm the victim, or to help the defendant shoot him; no gun was used at any earlier store; and there is no other evidence to support an inference that he intended that the victim be shot. Isaac’s seeing the defendant’s original accomplice in possession of a gun when that accomplice invited Isaac to join them in going to stores is insufficient to support a rational inference that Isaac had the intent that the victim at the fourth store be shot or injured. (See, People v Hayes, 117 AD2d 621 [a knowing participant in an armed robbery was not thereby acting in concert with the shooter in an attempted murder of the robbery victim]; People v La Coot, 118 AD2d 660 [participant in attempted robbery not a party to assault]; cf., People v Monaco, 14 NY2d 43.)
With respect to the merits, I shall treat in order the two provisions of CPL 60.22 (2), namely, paragraphs (a) and (b).
As a matter of law, Isaac may not reasonably be considered to have participated in the "offense charged” in this count: intentional murder or manslaughter with intent to cause serious physical injury, by shooting the deceased. (See, CPL 60.22 [2] [a].) The discussion above of mootness addresses this point as well.
The more substantial question regarding the status of Isaac as an accomplice to intentional murder or to manslaughter was whether Isaac could have been an "accomplice” under the second part of the statutory definition, paragraph (b) of subdi *712 vision (2): whether he may reasonably be considered to have participated in "[a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged.” Because of the facts of this case, he may not reasonably be considered to have participated in such an offense. The "facts” and "conduct” that "constitute” the alleged murder and the included manslaughter are that the defendant fatally shot the victim. There are no facts reasonably susceptible of an inference that Isaac intentionally aided, or even unintentionally aided, the defendant in that conduct, or in any offense "based upon” that conduct, such as assault or criminal possession of a weapon. Any other offense that Isaac reasonably might have been found to have participated in, such as attempted burglary or attempted larceny, was not "based upon” the same or some of the same facts or conduct that constituted intentional murder or manslaughter, namely, the shooting of the deceased.
It was, of course, the law of this case, by virtue of my charge to the jury, that Isaac could reasonably have been considered an accomplice to felony murder. However, felony murder and intentional murder are two entirely different offenses. The appellate courts of New York have frequently described the historical distinction, in which the commission of a felony supplants the element of mens rea for murder. (People v Berzups, 49 NY2d 417, 427; People v Murray, 92 AD2d 617.) Clearly, a nonkiller may be an "accomplice” of the killer for felony murder and not for intentional murder. It must be acknowledged that the felony murder was, in a very literal sense of paragraph (b), based on some of the same facts or conduct that constituted the intentional murder and manslaughter — those facts and that conduct being the shooting of the victim. There was no rational basis, however, for inferring that the witness participated in the shooting. (In another case, the facts could support that kind of inference, and in this case the facts might have supported that inference with respect to McDonald, but the issue never arose because at the trial McDonald did not implicate the defendant, and therefore McDonald’s status as an accomplice was not in issue.)
This court’s treatment of the witness Isaac, ruling that as a matter of law he was not an accomplice to intentional murder or manslaughter, even though he could be an accomplice as a matter of fact for felony murder, is consistent with rulings in pertinent, although not identical, situations. There are appellate holdings that a witness who took part in a serious crime *713 that was closely connected to the crime charged was not an accomplice to the crime charged, despite the connection between the two crimes and the witness’s implication of himself in a felony; this was so even though the two crimes had a common element, as they do in this case (causing the death). These cases confirm that Isaac’s status as a potential accomplice to the related attempted burglary or attempted larceny at the victim’s store, and thereby to the felony murder, does not entail his status as a potential accomplice to the intentional shooting of the victim. (See, People v McAuliffe, 36 NY2d 820 [accomplice to bribery is not an accomplice to the defendant’s perjury about that bribery]; People v Brooks, 34 NY2d 475 [receiver of stolen property is not an accomplice to the theft]; People v Greenberger, 96 AD2d 910 [vendors who paid kickbacks to the defendant, a hospital administrator, were not accomplices to the defendant’s attempt to evade payment of income taxes by failing to report those kickbacks as income]; People v Maldonado, 123 AD2d 788 [witness was not accomplice to manslaughter in the first degree alleged to have been committed when the defendant shot the deceased after a brawl, merely because during the brawl the witness tried to pass the defendant a large knife].)
These cases show that the kind of "mechanically literal” interpretation of CPL 60.22 (2) (b) urged by the defendant has been disapproved. (See, People v Brooks, supra, at 477-478.) Although the offense of bribery is in a broad, literal sense of CPL 60.22 (2) (b), based on "some of the same facts” as the offense of perjury about the bribe, the briber is not an accomplice to the perjury, although he would be an accomplice on a charge of bribery. The offense of larceny of property is, in a broad, literal sense, based on "some of the same facts” as the offense of receipt and possession of the property, since the two offenses have a common element (the theft of the property by someone), and the criminality of the second offense depends on the theft; in addition, the thief is in possession of stolen property jointly with the receiver. Nevertheless, the thief is not considered an accomplice of the receiver. Here, by analogy, the aider of an attempted burglary or attempted larceny is not by that fact alone an accomplice to the intentional shooting of an owner of the property by the burglar, despite the common element in intentional murder and felony murder.
My holding on the facts of this case does not create a danger of evasion of the requirement of corroboration for *714 "actual” accomplices, by framing the charges to include only acts that the witness observed without criminal intent, a danger perceived in Cona regarding continuing criminal enterprises if the court ruled there that the corrupted policeman was not an accomplice. (See, 49 NY2d, supra, at 35.) There is no risk that prosecutors will seek to avoid CPL 60.22 in cases of felony murder by obtaining indictments only for intentional murder.
The "mechanically literal” construction of CPL 60.22 proposed by the defendant is also inconsistent with the history and purposes of the accomplice statute. Until the enactment of the Criminal Procedure Law, the definition of an accomplice witness was limited to what is now paragraph (a) of subdivision (2). A witness was deemed an accomplice only if he could have been convicted of the same crime for which the defendant stood trial. (Former Code Crim Pro § 399; People v Thomas, 135 Misc 2d, supra, at 436, n 2.) Paragraph (b) of CPL 60.22 (2) broadened the definition of an accomplice " 'in order to provide a more equitable, operable and consistent standard for the courts in determining when the requirement of corroboration is applicable’ ”. (People v Basch, supra, 36 NY2d, at 157, citing People v Beaudet, 32 NY2d 371, 378.) This addition was not intended to create the sweeping addition urged by the defendant. As the Court of Appeals noted in People v McAuliffe (36 NY2d 820, 822, supra), in ruling that a bribe-giver is not an "accomplice” to the defendant bribe-taker’s perjury about the bribe: "To hold, as defendant would have us, that it should suffice to show only that the particular witness was 'in some way implicated’ in defendant’s criminal activity would be to stretch the statute far beyond the ambit intended by the Legislature.” McAuliffe remains authoritative after People v Cona (49 NY2d 26, supra); it was relied on in People v Greenberger (supra) and People v Kenny (100 AD2d 554).
In sum, precedent, legislative history, and common sense dictate that CPL 60.22 (2) (b) not be given the "mechanically literal” construction advocated by the defendant. (People v Brooks, supra; cf., People v Gruden, 42 NY2d 214, 216 [rejecting "literal” interpretation of the speedy trial statute]; II Corinthians 3:6.)